FILED
 2011 Mar-25  PM 04:24
U.S. DISTRICT COURT
    N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PNCEF, LLC, f/k/a NATIONAL CITY COMMERCIAL CAPITAL CO., LLC, | ] ] ] |
| Plaintiff, | ] ] |
| vs. | ] 2:09-CV-01459-LSC ] |
| NATIONAL WOODWORKS, INC., | ] ] |
| Defendant. | ] |

MEMORANDUM OF OPINION AND ORDER

I.   Introduction.

The Court has for consideration a motion for summary judgment, which was filed by the plaintiff, PNCEF, LLC ("PNCEF"), formerly known as National City Commercial Capital Company, LLC, on March 29, 2010.[1]  (Doc. 12.) PNCEF initiated this action on July 2, 2009, seeking judgment against defendant National Woodworks, Inc. ("National Woodworks"), for

---

[1] With permission of the Court, Plaintiff filed an Amended Complaint on July 21, 2010.  (Doc. 23.)  The Amended Complaint reflected Plaintiff's name change and included additional jurisdictional allegations.  The parties agreed at the evidentiary hearing on November 29, 2010, that the Court should treat the earlier-filed motion for summary judgment as a motion for judgment under the Amended Complaint.

$240,655.24, plus costs and fees, for breach of contract and recovery of money due under an open account. (Doc. 1.) The issues raised in PNCEF's motion have been briefed by the parties and are ripe for decision. The Court also held oral argument on the motion on November 29, 2010. Upon full consideration of the legal arguments and evidence presented, it is the opinion of the Court that PNCEF's motion for summary judgment is due to be denied.

II.     Facts.[2]

On September 27, 2001, National Woodworks entered into a lease agreement ("the Lease") with Information Leasing Corporation, for the rental of certain specified equipment ("Equipment"). National Woodworks renewed the Lease ("the Renewal Agreement") on December 20, 2006, with National City Commercial Capital Company, LLC, as successor to Information Leasing Corporation. National City Commercial Capital Company, LLC, has

---

[2]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, the facts submitted in the parties' Joint Status Report, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

since changed its name to PNCEF, LLC.  The Renewal Agreement expressly incorporated the provisions of the Lease and included an additional rental period of thirty-six (36) consecutive months, with monthly payments of $5,657.49, plus applicable taxes.

Paragraph 15(a) of the Lease provides that the "Lessee shall be in default hereunder if (i) Lessee fails to pay Rent or any other payment required hereunder within ten (10) business days of the due date thereof, and such default shall continue for a period of 10 days after receipt of written notice thereof. . . ."  (The Lease ¶ 15.)  The Lease also provides:

> (b) If Lessee is in default, Lessor shall have the right to take any one or more of the following actions: . . . . (ii) by written notice to Lessee, which notice shall apply to all Schedules hereunder except as specifically excluded therefrom by Lessor, declare due and payable, and Lessee shall without further demand, forthwith pay to Lessor an amount equal to any unpaid Rent then due as of the date of such notice plus, as liquidated damages or loss of the bargain and not as a penalty, an amount equal to the Stipulated Loss Value as set forth in the Schedules. . . . With respect to Equipment returned to or repossessed by Lessor, if Lessor has not terminated this Lease, Lessor will, in a commercially reasonable manner, and upon such terms as Lessor may determine in its sole discretion, either sell such Equipment at one of [sic] more public or private

> sales or re-lease the Equipment.  The proceeds of sale or re-lease shall be applied in the following order or priority: (i) to pay all Lessor's fees, costs and expenses for which Lessee is obligated pursuant to (c) below; (ii) to the extent not previously paid by Lessee, to pay Lessor its liquidated damages hereunder and all other sums then remaining unpaid hereunder; and (iii) to reimburse Lessee for any sums previously paid by Lessee to Lessor as liquidated damages; and (iv) any surplus shall be retained by Lessor.  In the event the proceeds of sale or re-lease are less than the sum of the amounts payable under (i) and (ii), Lessee shall pay Lessor such deficiency, forthwith.   (c) Lessee shall be liable for all reasonable legal and collection fees, costs and expenses arising from Lessee's default and the exercise of Lessor's remedies hereunder, including costs of repossessions, storage, repairs, reconditioning and sale or re-leasing of the Equipment.

(*Id*.)  The "Stipulated Loss Value" is an amount equal to 35% of the "Invoice Cost" of the Equipment. (*Id*., Ex. 1.)  The "Invoice Cost" for the Equipment was $668,703.00; therefore, the "Stipulated Loss Value" is $234,046.05.

National Woodworks has not made any payments under the Lease or Renewal Agreement since June/July 2008.  PNCEF repossessed the Equipment and re-sold it for $100,000.  PNCEF incurred costs of $11,905.72 in re-taking possession of and re-selling the Equipment.  PNCEF used a third

party to sell the Equipment, and PNCEF does not know the details of the sale nor who ultimately purchased the Equipment.  PNCEF also seeks attorney's fees in the amount of 15% of the fund to be recovered, or $24,648.67.

III.   Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "If the moving party bears the burden of proof at trial, it must demonstrate that 'on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party.'" *Irby v. Bittick*, 44 F.3d 949, 953 (11th Cir. 1995) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc)).  In evaluating the arguments of the movant, the

court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV. Discussion.

Plaintiff's Amended Complaint includes two claims against the defendant: (1) breach of contract, and (2) recovery of money due under an open account. (Doc. 23.) Plaintiff's motion for summary judgment only addresses the breach of contract claim. (Doc. 12 at 2, 6-7.)

The material elements necessary to establish a cause of action for "breach of contract" under Alabama law[3] are: "(1) a valid contract binding the parties; (2) the plaintiff['s] performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Reynolds Metal Co. v. Hill*, 825 So. 2d 100, 105-06 (Ala. 2002) (citing *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 303 (Ala. 1999)).

It is undisputed that National Woodworks entered into a contract (the Lease) with PNCEF's predecessor for the rental of equipment, and renewed the terms of that contract ("the Renewal Agreement") for an additional thirty-six (36) months on December 20, 2006. National Woodworks does not dispute that it violated the terms of its contract with PNCEF by failing to make required payments on or after June/July 2008. However, National Woodworks contends that PNCEF has not established resulting damages.

The parties agree that PNCEF recovered the Equipment and sold it for $100,000. PNCEF nevertheless maintains that National Woodworks owes

---

[3] Paragraph 26 of the Lease provides that the contract is governed by the laws of the State of Ohio. The parties both argue Alabama law. At the hearing on November 29, 2010, both parties agreed that there is no material distinction in Alabama and Ohio law with regard to the issues presented in this case, and Alabama law should be applied.

$110,236.14 in unpaid rent, plus an additional $134,046.05, pursuant to the provision in the Lease that requires payment of a "Stipulated Loss Value." The Lease provides that the Stipulated Loss Value is "liquidated damages or loss of the bargain and not . . . a penalty." (The Lease ¶ 15.) However, National Woodworks argues that the Stipulated Loss Value provision is an unenforceable penalty under Alabama law. National Woodworks also contends that even if the Stipulated Loss Value provision is enforceable, the Equipment was not sold in a commercially reasonable manner, as required by the Lease, and National Woodworks is entitled to a credit in the amount that the Equipment *should* have sold for.

    First, the Court notes that the Lease provides that in the event of default, National Woodworks is obligated to pay "any unpaid Rent then due as of the date" when written notice of default is provided to the lessor. In PNCEF's initial brief in support of summary judgment, PNCEF seeks only three months of unpaid rent, a total of $16,972.47. (Doc. 12 at 4 ¶ 10.) In the reply submission, PNCEF changes its mind and decides to ask for the full amount of unpaid rent under the remaining months of the Lease: $110,236.14. (Doc. 18 at 3 n.1.) In both memoranda, however, PNCEF

ignores that under the Lease, it is entitled only to the amount of unpaid rent due as of the date that National Woodworks was provided written notice of its default.  While counsel for the defendant conceded in open court that National Woodworks does not contest that it was provided with notice of default, neither party in this action has provided the Court with evidence of when written notice of default was given.  Without evidence of that date or an agreement by the parties as to when that date occurred, PNCEF has not met its burden at summary judgment to show that it is entitled to any certain amount of unpaid rent under the Lease and Renewal Agreement.

The Court turns to the issue of whether the "Stipulated Loss Value" is a penalty.  In Alabama, contractual "penalty provisions" are "void as against public policy." *Camelot Music, Inc. v. Marx Realty & Imp. Co., Inc.*, 514 So. 2d 987, 990 (Ala. 1987).  "Mere denomination" of a clause as a "liquidated damages" provision "is not conclusive of its real character. *Cook v. Brown*, 408 So. 2d 143, 144 (Ala. Civ. App. 1981).  "Courts . . . are disposed to lean against any interpretation of a contract which will make the provision one for liquidated damages and, in all cases of doubtful intention, will pronounce the stipulated sum a penalty." *Camelot Music, Inc.*, 514 So. 2d at 990.

"[L]iquidated damages are a sum to be paid in lieu of performance, while a penalty is characterized as a security for the performance of the agreement or as a punishment for default." *Id.* (internal citations omitted). Alabama courts "generally identify three criteria by which a valid liquidated damages clause may be distinguished from a penalty:

> First, the injury caused by the breach must be difficult or impossible to accurately estimate; second, the parties must intend to provide for damages rather than for a penalty; and, third, the sum stipulated must be a reasonable pre-breach of the probable loss.

*Id.* (citing C. Gamble and D. Corley, Alabama Law of Damages, § 5-4 (1982)). "Determining whether a liquidated damages provision is valid is a question of law to be determined by the trial court based on the facts of each case." *Id.* (citing *Cook*, 408 So. 2d at 143.)

PNCEF has not established that the injury caused by the breach of the Lease and Renewal Agreement was difficult or impossible to accurately estimate. More importantly, PNCEF has not presented sufficient evidence to meet its burden in establishing that the Stipulated Loss Value is a reasonable estimate of the probable loss in case of default. At the November 2010

hearing, PNCEF conceded that if National Woodworks continued to make its payments under the Renewal Agreement, National Woodworks would have had the option to purchase the Equipment for $1.  Assuming National Woodworks exercised that option at the conclusion of the rental term, PNCEF would have collected $110,237.14, over the remaining term of the Lease, and have no equipment to rent or sell.  That is the amount PNCEF would have obtained under the contract if it had not been breached: the amount of the remaining rent due, plus $1.  If National Woodworks elected not to purchase the Equipment for a mere $1, PNCEF retained the benefit to re-sell or re-lease the Equipment.  However, PNCEF contends that the Stipulated Loss Value provision requires National Woodworks, once in default, to pay $110,236.14 in remaining rent due, plus $234,046.05, and the latter amount is offset only if PNCEF sells or re-leases the Equipment.  At the November 2010 hearing, counsel for PNCEF conceded this result "could be punitive." PNCEF has failed to meet its burden to show sufficient evidence that the Stipulated Loss Value provision at issue is not a penalty and is enforceable as a liquidated damages provision under Alabama law.

Even if the Court was convinced that the Stipulated Loss Value provision is valid and enforceable, the Lease requires the lessor to sell the Equipment in a "commercially reasonable manner," if the lessor chooses to sell the Equipment following the lessee's default.  PNCEF chose to sell the Equipment.  However, Plaintiff does not provide the Court with any evidence that the Equipment was sold in a commercially reasonable manner.  At the November 2010 hearing, counsel for the plaintiff conceded it has no details about the sale.  PNCEF sold the Equipment through a third-party and has no idea who purchased it, let alone what circumstances surrounded the sale.  Plaintiff's evidence is clearly insufficient to meet its burden to show the value of its damages.

V.   Conclusion.

For the reasons outlined above, Plaintiff's motion for summary judgment is DENIED.  The Clerk of Court is DIRECTED to set this case for trial.

Done this 25th day of March 2011.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297